FILED

2016 Mar-31  AM 11:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **MARGARET J. BARCLAY,** ] | |
| ] | |
|     **Plaintiff,** ] | |
| ] | |
| **v.** ] | **Case No.:**     **1:14-cv-01573-KOB** |
| ] | |
| **FIRST NATIONAL BANK OF** ] | |
| **TALLADEGA,** ] | |
| ] | |
|     **Defendant.** ] | |
| ] | |

## MEMORANDUM OPINION

### I.     Introduction

This matter is before the court on the Defendant's "Motion for Summary Judgment" (doc. 26) and the Defendant's "Objection to Materials Submitted by Plaintiff" (doc. 35), which the court will construe as a Motion to Strike.

This case presents an important issue involving the statute of limitations applicable to failure to promote claims under 42 U.S.C. § 1981. Section 1981 failure to promote claims are potentially subject to two separate statutes of limitations. Some of such claims are subject to a four-year statute of limitations under 28 U.S.C. § 1658, while others are subject to "the most appropriate or analogous state statute of limitations." *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661-62 (1987).[1] This difference significantly limits the time in which some plaintiffs are able to bring their claims under § 1981. This Opinion addresses and clarifies those situations in

---

[1] In Alabama, the most appropriate state statute of limitations for § 1981 claims based on a failure to promote is the two-year statute of limitations on personal injury actions. *See* Ala. Code § 6-2-38 (1975).

which plaintiffs' claims are governed by the shorter state statute of limitations.

In the instant case, Plaintiff Margaret Barclay brought suit against Defendant First National Bank of Talladega ("FNB") pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981, for claims based on a failure to promote, retaliatory discharge, and unequal treatment. The court dismissed Barclay's Title VII and § 1981 unequal treatment claims, finding that Barclay's allegations were insufficient to show intentional discrimination. The court also dismissed Barclay's Title VII failure to promote claim because Barclay had not yet exhausted her administrative remedies. Barclay has since dropped her retaliatory discharge claims and has chosen to pursue only her § 1981 failure to promote claim. Therefore, the only claim remaining in this action is Barclay's § 1981 claim for race discrimination based on a failure to promote.

For the reasons stated in this Memorandum Opinion, the court will DENY FNB's Motion to Strike. The court will, however, GRANT FNB's Motion for Summary Judgment because it finds that Barclay's sole remaining claim is barred by the most analogous state statute of limitations, which is two years.

## II.    Motion to Strike

Before the court discusses FNB's Motion for Summary Judgment, it will address FNB's objections to Barclay's evidentiary materials offered in support of her response to FNB's Motion.

When ruling on a motion for summary judgment, the court may not consider evidence that "could not be reduced to an admissible form at trial." *Riley v. Univ. of Ala. Health Serv. Foundation, P.C.*, 990 F. Supp. 2d 1177, 1184 (N.D. Ala. 2014) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999)). A party challenging the admissibility of evidence "may object that the material cited to support or dispute a fact cannot be presented in a form that would be

2

admissible in evidence." Fed. R. Civ. P. 56(c)(2). An objection under Rule 56(c)(2) "'functions much as an objection at trial . . . . The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Riley*, 990 F. Supp. 2d at 1186 (quoting Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments).

In its Objection to Barclay's Evidentiary Submission, FNB requests that the court strike or disregard various portions of the evidence offered by Barclay because, it contends, the evidence is not based on personal knowledge, is contradicted by previous testimony, is hearsay, or is otherwise objectionable.

As will be discussed in greater detail below, the court finds that it may decide FNB's Motion for Summary Judgment on statute of limitation grounds. Therefore, the court only needs to consider the evidence that is relevant to its analysis of the appropriate statute of limitations.

Accordingly, the court will DENY FNB's Motion to Strike as to the objections it makes regarding various paragraphs of Barclay's declaration, Barclay's EEOC determination, and a memo prepared by an executive officer at FNB discussing the reasons for promoting an employee other than Barclay.

These pieces of evidence are not relevant to the court's analysis of the timeliness of Barclay's claim. This evidence could be relevant to an analysis of whether FNB's proffered reasons for promoting another employee were a pretext for racial discrimination; however, because the court finds that Barclay's claim is barred by the applicable statute of limitations, the court does not engage in an analysis of their admissibility at this stage.

The two objections that address evidence relevant to the court's statute of limitations analysis are FNB's objection to Barclay's statement that she was paid a salary and FNB's

3

objection to Barclay's declaration as a whole. The court will address each of these objections in turn.

First, FNB asks the court to strike from paragraph 2 of Barclay's declaration her statement that she was paid on a salaried basis rather than on an hourly basis. FNB contends that Barclay's previous deposition testimony conflicts with this statement from her declaration. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

FNB argues that Barclay's deposition testimony unambiguously contradicts her statement that she was paid a salary. However, in the deposition testimony cited by FNB, Barclay addresses only whether she was ever paid *overtime*, not whether she was paid on a salaried basis at the time of the promotion in question. The cited portion of Barclay's deposition testimony reads:

> Q:   If you worked over forty hours in a work week, you were paid overtime?
>
> A:   I wasn't in the beginning. I think that started within the last five or six years, they started paying me overtime.

(Doc. 28-1, 49:12-16).

The fact that FNB sometimes paid Barclay for overtime does not unambiguously show that Barclay was paid on an hourly basis. Employers are not precluded from paying salaried employees overtime. In fact, the Fair Labor Standards Act sometimes requires employers to pay salaried employees overtime when they work in excess of forty hours in a week. *See* 29 U.S.C. § 213 (setting out the situations in which employees are exempt from overtime compensation

4

requirements). Because the court finds that Barclay's deposition testimony does not unambiguously contradict the statements in her affidavit, it will DENY FNB's Motion to Strike paragraph 2 from Barclay's declaration.

Next, FNB asks the court to strike Barclay's declaration in its entirety, contending that it does not comply with the requirements of 28 U.S.C. § 1746. FNB argues that Barclay's declaration should be stricken because it begins with, rather than concludes with, Barclay's affirmation. Title 28 U.S.C. § 1746 says that a declarant's affidavit should be supported, in writing, "as true under penalty of perjury, and dated, *in substantially* the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" (emphasis added). Barclay's affirmation appears at the beginning of her declaration and states, "Margaret Barclay, first being duly sworn, hereby states the following under penalty of perjury pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the following is true and correct based on my own personal knowledge." (Doc. 33-1).

The court finds that FNB's objection to the affirmation in Barclay's declaration lacks merit. First, 28 U.S.C. § 1746 does not contain a requirement that a declaration *conclude* with the declarant's affirmation. Second, 28 U.S.C. § 1746 states that the declarant's affirmation should be in "*substantially* the following form," not *exactly* the following form. That Barclay's affirmation states that the *following* is true rather than that the *foregoing* is true is immaterial. Barclay made her declaration under the penalty of perjury. Therefore, the court will also DENY as frivolous FNB's Motion to Strike Barclay's declaration in its entirety.

III.    **Motion for Summary Judgment**

    A.    <u>Standard of Review</u>

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden shifts to the non-moving party to produce sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

In ruling on a motion for summary judgment, the court should view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The evidence of

the non-moving party "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted).  This standard exists because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255).

After both parties have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

B.    Statement of Facts

Plaintiff Margaret Barclay is an African-American female. She was hired by First National Bank of Talladega in 1974. Barclay attended community college in 1974, where she studied accounting and bookkeeping.

In 1999, Barclay became Assistant Manager of Data Processing. As Assistant Manager of Data Processing, Barclay's job responsibilities included data entry and generating reports for different departments within the bank. Although Barclay's title was Assistant Manager, she did not supervise any other employees. Barclay agreed that in her position, she was responsible for managing a function (data processing), not for managing any other employees. Barclay did, however, train her coworkers in data processing.

From the 1980s to 2011, Betty Conway, a white female, was Barclay's supervisor. Conway was the head of the Bookkeeping Department in the 1980s, and became an Assistant

7

Vice President in 2000. Conway's job duties as Assistant Vice President included supervising three or four employees and completing their performance evaluations, balancing the bank's accounts nightly, and performing wire transfers. When Conway was absent, Barclay would fill in for her and would perform her duties. Barclay contends that when she filled in for Conway, she also performed Conway's supervisory duties.

In the summer of 2011, Conway announced that she planned to retire at the end of the year. As of August 2011, Conway made $64,800 annually. Conway was also offered health insurance, with 100% of the premium for family coverage paid for by FNB, but only used single coverage. FNB also provided Conway with life insurance for three times her annual salary, up to a maximum amount of $175,000, and three weeks of vacation a year plus one additional day for each year of service with the bank.

When Conway retired, FNB eliminated her position as Assistant Vice President. In its place, FNB created the position of Bookkeeping Supervisor.

On August 8, 2011, FNB promoted Jessica Straw, a white female, to the position of Bookkeeping Supervisor. This promotion is the one that Barclay claims she should have received. The job duties of the Bookkeeping Supervisor were the same as Betty Conway's duties had been as Assistant Vice President. The Bookkeeping Supervisor retained supervisory responsibility over the three or four employees in the bookkeeping department.

Upon becoming Bookkeeping Supervisor, Straw was paid $13.15 an hour. Straw received health insurance, with FNB paying for 100% of the premium for single coverage. FNB also provided Straw with life insurance for twice the amount of her annual salary, and two weeks of vacation a year plus one additional day for each year of service with the bank.

8

At the time of Straw's promotion, Barclay was still the Assistant Manager of Data Processing and was paid $34,500 a year, which equals $17.02 an hour if Barclay were paid on an hourly basis. FNB contends that Barclay was paid hourly; Barclay, on the other hand, asserts that she was paid on a salaried basis. Barclay received health insurance from FNB, with FNB paying for 100% of the premium for single coverage. FNB also provided Barclay with life insurance for twice the amount of her annual salary, and two weeks of vacation a year plus one additional day for each year of service with the bank.

Barclay has previously represented to the court that if she were promoted to Bookkeeping Supervisor, "she should have . . . received the same pay and benefits Conway was earning at the time of the promotion." (Doc. 23, at 4-5). Barclay testified in her deposition that she expected that she would have received an increase in both pay and benefits if she had been promoted. Barclay further testified, however, that she would have accepted the promotion, regardless of pay and benefits, just to have the title of supervisor.

C.     Discussion

FNB argues that the court should grant summary judgment in its favor for two reasons: First, Barclay's claim is untimely under the applicable statute of limitations, and second, Barclay has failed to demonstrate that FNB's reasons for selecting Jessica Straw as the Bookkeeping Supervisor were a pretext for racial discrimination.

As will be discussed in greater detail below, the court finds that Barclay's claim is barred by the applicable statute of limitations. Because the court finds that Barclay's claim is untimely,

it does not need to reach an analysis of the merits of Barclay's claim.[2]

The promotion at issue in this case occurred on August 8, 2011. Barclay filed the instant lawsuit on August 13, 2014, alleging that FNB discriminated against her in violation of 42 U.S.C. § 1981 by failing to promote her. FNB contends that Barclay's claim is untimely because it is subject to a two-year statute of limitations, while Barclay contends that her claim is timely because it is subject to a four-year statute of limitations. The court finds that Barclay's claim is subject to the two-year statute of limitations, and is, therefore, barred.

Failure to promote claims under § 1981 are subject to two possible statutes of limitations. Section 1981 itself does not contain a statute of limitations. However, in 1987, the United States Supreme Court directed federal courts to apply "the most appropriate or analogous state statute of limitations" to claims brought under § 1981. *See Goodman*, 482 U.S. at 661-62 (upholding decision to apply state personal injury statute of limitations), *superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). In Alabama, the most analogous statute of limitations for failure to promote claims under § 1981 as originally enacted is the two-year limit on personal injury actions. *See* Ala. Code § 6-2-38; *Price v. M & H Valve Co.*, 177 F. App'x 1, 10 (11th Cir. 2006); *Young v. Int'l Paper Co.*, No. 10-00279-CG-M, 2011 WL 3711210, at *4 (S.D. Ala. Aug. 24, 2011).

In 1990, Congress passed a catch-all statute of limitations, which states that "a civil action arising under an Act of Congress enacted *after the date of the enactment of this section*

---

[2] However, the court finds that, alternatively, if it were to engage in a full analysis of the merits of Barclay's claim, FNB would also be entitled to summary judgment on the merits because Barclay has failed to demonstrate that FNB's proffered reasons for promoting Jessica Straw were a pretext for discrimination, even if the court considered all of the evidence FNB sought to strike from Barclay's Opposition.

may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658

(emphasis added). Then, in 1991, Congress passed the Civil Rights Act of 1991, which amended

§ 1981. *See Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 303 (1994) (explaining that the 1991

amendment "enlarged the category of conduct that is subject to § 1981 liability"); *Vance v. S.

Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 (11th Cir. 1993) ("In November 1991 . . . Congress

enacted the Civil Rights Act of 1991, which, among other things, enlarges the range of behavior

subject to section 1981.").

　　　Following this amendment, the United States Supreme Court held that the four-year

statute of limitations applied to causes of action that were created by the 1991 amendment to

§ 1981. *See Jones*, 541 U.S. at 382 ("[A] cause of action . . . is governed by § 1658's 4-year

statute of limitations . . . *if* the plaintiff's claim against the defendant *was made possible by a

post-1990 enactment*.") (emphasis added). Only causes of action that were created by a post-1990

amendment to § 1981 are subject to the four-year statute of limitations. Causes of action that

were viable under § 1981 as originally enacted remain subject to the two-year statute of

limitations. *See Price*, 117 F. App'x at 10 (explaining that § 1981 claims "cognizable before the

effective date of the four-year 'catch-all' statute of limitations under § 1658" are "subject to the

two-year limitation period."); *Young*, 2011 WL 3711210, at *4 (citing *Jones*, 541 U.S. at 380-81)

("The statutory four year limitations period is only applicable to new causes of action that were

not cognizable under § 1981 prior to the enactment of § 1658.").

　　　Thus, the critical inquiry in this case is whether Barclay could have brought her failure to

promote claim under § 1981 as originally enacted. If Barclay could have brought her claim under

§ 1981 as originally enacted, then she is limited to a two-year statute of limitations, and her claim

is untimely. If Barclay's cause of action only became viable after the 1991 amendment to § 1981, then her claim would be subject to a four-year statute of limitations and would be timely.

Pre-amendment, an employee could only pursue a § 1981 claim based on a failure to promote *if* "the nature of the change in position was such that it involved the opportunity *to enter into a new contract* with the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989) (emphasis added). If the promotion would create "a new and distinct relation between the employee and the employer," then the claim was actionable under pre-amendment § 1981. *Id.*

In assessing whether a promotion creates a "new and distinct relation" with the employer, courts consider a number of factors, including "pay, duties, responsibilities, status as hourly or salaried employee, method of calculating salary, required qualifications, daily duties, potential liability and other benefits." *Young*, 2011 WL 3711210, at *5 (quoting *DeBailey v. Lynch-Davidson Motors, Inc.,* 734 F. Supp. 974, 977 (M.D. Fla. 1990)).

The addition of supervisory duties or a promotion from a non-management to a management position can be sufficient to create a "new and distinct relation" between employer and employee. *See Wall v. Trust Co. of Ga.*, 946 F.2d 805, 808 (11th Cir. 1991) (finding that a "new and distinct relation" was not created where "the change would not have involved the elevation of [the plaintiff] to a management position which could be considered a new contract"); *Sitgraves v. Allied-Signal,* 953 F.2d 570, 574 (9th Cir. 1992) (explaining that "a simple change in position from supervised employee to supervisor is one that alters the contractual relationship sufficiently to fall within the purview of [pre-amendment] section 1981"); *Mallory v. Booth Refrig. Supply Co.*, 882 F.2d 908, 910 (4th Cir. 1989) (holding that a promotion from clerk to supervisor was actionable under pre-amendment § 1981); *Edwards v. Nat'l Vision, Inc.,* 946 F.

12

Supp. 2d 1153, 1170 (N.D. Ala. 2013) (quoting *Smith v. Trane U.S., Inc.,* No. 6:11-cv-36, 2011 WL 4944143, at *4 (S.D. Ga. Oct. 17, 2011)) ("Courts . . . have recognized that promotion decisions cognizable under the pre-1991 statute include 'promotions from non-supervisory to supervisory positions'"); *Adams v. Office of Att'y Gen., Ala.*, No. 2:11-cv-621-WKW, 2013 WL 2155384, at *4 (M.D. Ala. May 17, 2013) (applying two-year statute of limitations to promotion that would have involved new supervisory duties, such as assigning cases, doing performance evaluations, and recommending pay raises).

Conversely, a promotion will not create "a new and distinct relation" if it involves only "routine increases in salary or responsibility." *Harrison v. Assoc. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990) (discussing *Patterson*, 491 U.S. 164); *see also Wall,* 946 F.2d at 808 (finding that four-year statute of limitations applied where "customer service representative and tax analyst positions are both nonexempt salaried jobs, are relatively equal in grade (118 versus 119), provide identical benefits and compensation, and are covered by the same policies and procedures.").

Barclay alleges in this case that she should have been *promoted* to the position of Bookkeeping Supervisor. The court finds that a promotion to Bookkeeping Supervisor would have created a "new and distinct relation" between Barclay and FNB, such that Barclay's claim would have been actionable under pre-amendment § 1981.

A promotion to Bookkeeping Supervisor would have involved the addition of supervisory duties. In her role as Assistant Manager of Data Processing, Barclay did *not* supervise any other employees. Barclay contends that she took on the supervisory duties of her supervisor Betty Conway whenever she filled in for her; however, Barclay did not have regular supervisory

responsibilities in her position as Assistant Manager of Data Processing. Even if Barclay occasionally performed some of Conway's supervisory duties in her absence, Barclay was not responsible for overseeing the work of the other bookkeeping employees or for conducting their annual performance evaluations in her position as Assistant Manager. Barclay admitted that, as Assistant Manager, she managed a function, not any employees. The Bookkeeping Supervisor, on the other hand, was responsible for supervising three or four employees in the bookkeeping department on a regular basis.

FNB's Organization Charts demonstrate that Betty Conway, as AVP, and Jessica Straw, as Bookkeeping Supervisor, had supervisory authority over employees in the bookkeeping department. Barclay admitted in her deposition that she would have moved up the Organization Chart to a supervisor position had she been promoted.

Barclay's deposition testimony confirms that the promotion from Assistant Manager of Data Processing to Bookkeeping Supervisor would have involved the addition of supervisory duties. When asked who reported to her in her position as Assistant Manager, Barclay replied, "No one." (Doc. 28-1, 25:16-18). Conversely, when questioned about the supervisory duties of the Bookkeeping Supervisor, Barclay explained that she would have been responsible for supervising the three or four employees in the bookkeeping department if she had been promoted to the position of Bookkeeping Supervisor.

Barclay's testimony also shows that the promotion would have elevated her from a non-management position to a management position with FNB. When asked if she would have considered herself a member of management if she had been promoted to Bookkeeping Supervisor, Barclay replied, "Yes, sir." (Doc. 28-1, 119:4-6).

14

The addition of supervisory duties and the elevation in status from non-management employee to management employee show that a "new and distinct relation" would have been created between Barclay and FNB if she had been promoted. These factors alone demonstrate that Barclay's failure to promote claim would have been viable under pre-amendment § 1981.

The parties dispute whether Barclay's pay and benefits would have increased if she had been promoted to Bookkeeping Supervisor. Barclay has consistently represented to the court: "It is the plaintiff's position . . . that if the plaintiff would have received Conway's position,[3] she should have also received the same pay and benefits Conway was earning at the time of the promotion," and "[i]t is the plaintiff's position that the proper comparator in regards to determining back-pay would be Conway, not Straw or Hall." (Doc. 23, at 4-5). FNB, on the other hand, has represented to the court that Conway is not the proper comparator for pay and "that Plaintiff would not be entitled to back pay even if she prevailed on her promotion claim because her pay exceeded Straw's." (*Id.* at 5).

A dispute also exists between Barclay and FNB regarding whether Barclay was paid on an hourly or salaried basis. Barclay contends that she was paid a salary, while FNB contends that

---

[3] In some filings, Barclay seems to argue that she was wrongfully denied a promotion to both the Assistant Vice President *and* Bookkeeping Supervisor positions. However, Barclay has only pled that she was denied a promotion to the Bookkeeping Supervisor position – not the eliminated Assistant Vice President position. *See* Complaint, Doc. 1, ¶ 8 ("Specifically, the plaintiff was denied a promotion to Supervisor on August 8, 2011.").

Moreover, Barclay has addressed only the Bookkeeping Supervisor position in her Opposition to FNB's Motion for Summary Judgment. Therefore, even if Barclay had pled allegations based on the Assistant Vice President position, Barclay has abandoned that claim. *See Wilkerson v. Grinnell Corp.*, 270 F. 3d 1314, 1322 (11th Cir. 2001) (finding that a claim not raised in a summary judgment brief was abandoned). Because Barclay has abandoned her claim related to the Assistant Vice President position, the only position at issue in this case is the Bookkeeping Supervisor position, which was awarded to Jessica Straw.

Barclay was paid on an hourly basis.

These disputes, however, do not affect the court's analysis. If, consistent with her position throughout this case, Barclay were entitled to Conway's pay and benefits, this significant increase in pay and benefits would further demonstrate the creation of a new relationship between Barclay and FNB. The court finds that Barclay would most likely have been entitled to some increase in pay and benefits had she been promoted.

Nevertheless, *even if Barclay were not entitled to any increase* in pay or benefits, a promotion to the position of Bookkeeping Supervisor would still have created a new relationship between Barclay and FNB because the promotion would have involved the addition of supervisory duties as well as the elevation in status to a management position. Barclay's promotion to Bookkeeping Supervisor would not have been a "routine increase[] in salary or responsibility;" it would have been a sizable step up the management ladder at FNB. *See Harrison*, 917 F.2d at 198.

Therefore, the court finds that the promotion at issue in Barclay's claim against FNB would have created a "new and distinct relation" with FNB, such that it would be a cognizable claim under pre-amendment § 1981. Accordingly, Barclay's claim is subject to a two-year statute of limitations, and is untimely because Barclay filed suit more than two years after she was denied the promotion to Bookkeeping Supervisor.

**IV.    Conclusion**

Because the court finds that Barclay's claim is time-barred by the applicable statute of limitations, it will GRANT FNB's Motion for Summary Judgment.

The court will also DENY FNB's Motion to Strike.

16

The court will enter a separate final Order along with this Opinion.

DONE and ORDERED this 31st day of March, 2016.


_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE